**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JENNIFER HAMM, | CASE NO. 1:15-cv-00778-YK-GBC |
| Plaintiff, | (JUDGE KANE) |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS |
| Defendant. | Docs. 1, 9, 10, 11, 14, 15 |

## <u>REPORT AND RECOMMENDATION</u>

### I.   Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Jennifer Hamm ("Plaintiff") for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 et seq., §§416.901 et. seq. (the "Regulations"). No treating source medical opinion supports Plaintiff's claims. Because there are no treating source medical opinions, the Court simply reviews whether any reasonable person would accept the evidence, including non-treating medical opinions that support the ALJ's decision, as adequate to deny benefits. The Court reviews

the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Here, the Court would not direct a verdict in Plaintiff's favor. The Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.    Procedural Background

On August 1, 2012, Plaintiff applied for DIB and SSI. (Tr. 176-84). On October 5, 2012, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 57-86), and Plaintiff requested a hearing. (Tr. 89-91). On March 24, 2014, an ALJ held a hearing at which Plaintiff—who was represented by an attorney— and a vocational expert ("VE") appeared and testified. (Tr. 26-56).  On April 4, 2014, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 8-25). Plaintiff requested review with the Appeals Council (Tr. 6-7), which the Appeals Council denied on March 18, 2015, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On April 21, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On June 17, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On August 2, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 11). On September 2, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 14). On September 13, 2015, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 15).  On January 15, 2016, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive DIB or SSI, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *Id.* The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *Id.* Before step four, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). *Id.*

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A).  Specifically, the Act provides that:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory

diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

## IV.    Relevant Facts in the Record

### A. Age, education, and vocational history

Plaintiff was born in 1972 and was classified by the Regulations as a younger individual throughout the relevant period. (Tr. 18); 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as an administrative clerk, product assembler, housekeeper, cashier, and store laborer. (Tr. 18). Plaintiff alleges onset on March 19, 2012. Plaintiff earned enough income to be insured[1] through March 31, 2014. (Tr. 13).

### B. Medical evidence and functional limitations

Plaintiff suffered from mental impairments. The Court rejects Plaintiff's only claim on appeal regarding mental impairments because Plaintiff failed to comply with *Rutherford*, which requires her to identify specific functional limitations that were omitted from the ALJ RFC. *Infra*. Plaintiff did not treat with mental health specialists during the relevant period, did not exhibit any abnormalities on mental status examination, and took only Cymbalta for mental impairments. (Tr. 295, 305-07, 313-15, 515-17). Plaintiff reported mental symptoms once, after her romantic partner had left her, but otherwise did not report significant mental complaints. (Tr. 613-15).  The only mental health medical opinion indicates that Plaintiff's mental health impairments were non-

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." See 20 C.F.R. §§ 404.130-134.

severe. (Tr. 60). Consequently, the Court limits its discussion primarily to Plaintiff's physical impairments.

The relevant period begins in March of 2012. In 2005, Plaintiff was in a car accident and complained of shoulder and back pain. (Tr. 249, 258, 349, 353, 398). Plaintiff also suffered from hyperglycemia, asthma, and diabetes. (Tr. 331). Plaintiff treated for an exacerbation of her pain in November of 2008. (Tr. 350). In 2009, Plaintiff reported a gradual onset of blurred vision and a history of vertigo. (Tr. 353). Plaintiff was taking meclizine but "it does not help at work bc it 'knocks her out.'" (Tr. 353). Plaintiff had no muscle pain. (Tr. 353). By October of 2009, Plaintiff was denying eye symptoms. (Tr. 357). In 2010, testing indicated that Plaintiff's bone density was "below the expected range for age." (Tr. 367). There is no evidence of subsequent treatment until March 2011, when Plaintiff visited a chiropractor. (Tr. 535). She reported she had reinjured her back the previous week and pain with quick movements, bending, and twisting. (Tr. 542). In October of 2011, Plaintiff obtained an updated eye glass prescription after reporting increased blurry vision. (Tr. 411). In September of 2012, Plaintiff obtained new glasses after she lost her previous pair, and reported no change in her vision. (Tr. 413).

Physiatry records provide a summary of Plaintiff's complaints around the time of alleged disability onset:

> This is a 39-year-old right-handed female with a history of acute onset of left lower extremity sciatic pain, all of a sudden, in February 2012. The pain shot down from her left groin down to her foot and caused numbness and tingling in her calf and foot. There was no precipitating event and it happened all of a

sudden. She does have a history of neuropathy of her feet and lower legs and had been on gabapentin until recently. She weaned herself off to try a trial of Cymbalta, which she has not yet started. She has had problems with the calf and foot being ice-cold feeling, and because of that, her primary care sent her for an MRI which showed degenerative changes and foraminal narrowing on the right, greater than the left side, at L4-L5. She has a history of a motor vehicle accident seven years ago, in which it caused neck, upper back, and low back problems and she has had chronic left shoulder girdle and dorsal back pain since that time. She had gone to chiropractic care back then so she went to the chiropractor twice a week for three weeks. He did ultrasound, heat, and stretches and it decreased the leg pain again until Easter Sunday when she stayed on her legs all day and became black and blue in her feet. She did not return to the chiropractor because of the expense, 40 dollars a visit, and she had been going twice a week for three weeks. Now she has a deep pain like a tailbone fracture. She can only take her puppy for short walks and after a long walk is hard to move and she is limping by the time she returns. She had to stop the gabapentin because of swelling in her wrist and hand. Currently, she has an aching tailbone pain, burning calf, foot pains intermittently. Intermittent shooting pains down the back and the front of the left lower extremity and spasms in the left shoulder girdle and rib area from the motor vehicle accident years ago. Her pain varies from a 7 to a 10/10. She is unable to do much housework and she gets the assistance of her children. Exercise and sports activities; she does none, although physical therapy gave her a couple home exercises that she does sporadically. She is not now working. She was doing office work, Lifting and carrying eight pounds, she is able to tolerate, which is a gallon, Other than that she tries to avoid lifting. She has a lot of difficulty climbing stairs; she is on a third floor apartment. She has a lot of difficulty with prolonged sitting, standing, sleeping, changing positions, and walking. She has some difficulty with shopping, reaching, driving, bathing, dressing, and sexual activity. She gets some temporary relief from heat but only while she is using it. Reduced activity, bedrest, and pain medications are helpful. She takes tramadol 50 mg at bedtime as needed for the pain, She has Cymbalta prescribed but she has not been able to afford it and she has not returned for chiropractic care or massage, which helped in the past, because of finances, She did not sign up for the therapy recommended because of the 15 dollar co-pay and that is cost prohibitive, The only thing that she takes for the pain is the tramadol at bedtime. She has never tried any topical analgesics.

(Tr. 258) *see also* (Tr. 294-95, 368-69). Plaintiff reported "positive paresthesias in both lower extremities from the knees down from diabetic peripheral neuropathy." (Tr. 259). Examination indicated normal sensation, normal muscle done, decreased strength, edema, mottling, toe nail fungus, and increased cervical lordosis. (Tr. 263). Physical examinations from other providers had indicated positive straight leg-raising test, decreased sensation to pinprick, and slight weakness in the left lower extremity. (Tr. 294-95). Lumbar spine MRI indicated "small posterior annular disc tear and broad-based posterior annular disc bulge and endplate DJD and moderate right greater than left neural foraminal narrowing" and "mild L3-4 facet osteoarthropathy." (Tr. 265). Physiatrist Dr. Bernal diagnosed coccydynia, contracture of the hip, lumbar radiculopathy, myalgia and myositis and segmental dysfunction of sacroiliac region. (Tr. 256). Plaintiff was instructed to perform home exercises because she could not afford physical therapy. (Tr. 257). Dr. Bernal did not complete an RFC assessment that was included in the state agency's medical records request. (Tr. 271-72).

In June of 2012, Plaintiff presented to CRNP VanArsdale requesting medical assistance forms be completed. (Tr. 307). She reported that her left hand had been swollen and painful over the previous four days. (Tr. 307). Plaintiff also requested CRNP VanArsdale complete forms for cash assistance because she "can't find a job based on her physical limitations secondary to back injury and pain level." (Tr. 307). Examination indicated decreased sensation in her thumb, good range of motion, no edema, and elbow

tenderness. (Tr. 309). On June 28, 2012, Plaintiff followed-up for bilateral arm pain, and reported she was exercising regularly with only "some pain on her right side thumb." (Tr. 310). Plaintiff exhibited decreased sensation in her right thumb with no edema or swelling, equal grip strength, and full range of motion. (Tr. 312).

On July 16, 2012, EMG indicated evidence concerning for C6 radiculopathy based on nerve root irritation, as well as some evidence of median entrapment neuropathy indicating that Plaintiff might be experiencing carpal tunnel syndrome (Tr. 384).

On July 20, 2012, Plaintiff presented to endocrinologist Dr. Aruna Chelliah, M.D. for a follow-up of Type 1 diabetes and osteoporosis. (Tr. 275). Plaintiff had applied to "multiple jobs." (Tr. 275).  She reported low back pain radiating to her leg, and numbness and tingling in her right arm and hand. (Tr. 275). She reported symptom relating to blood sugar "rarely." (Tr. 275). Left elbow X-rays were normal and physical examination indicated no back tenderness. (Tr. 277). Cervical spine X-rays were unremarkable. (Tr. 278, 380-81). Plaintiff's bone density was "within the expected range for age." (Tr. 278). Dr. Chelliah diagnosed hyperlipidemia, osteoporosis, type 1 diabetes mellitus-uncontrolled, diabetic peripheral neuropathy, diabetic hypoglycemia- uncontrolled, cervical radiculopathy, lumbar radiculopathy and depression with anxiety and instructed Plaintiff to continue the same diabetes treatment. (Tr. 274). Dr. Chelliah did not complete an RFC assessment that was included in the state agency's medical records request. (Tr. 291-92).

On August 3, 2012, Plaintiff reported Cymbalta helped with neuropathy but her back pain was worse after discontinuing Tramadol. (Tr. 313). CRNP VanArsdale observed decreased strength in Plaintiff's hands and decreased sensation in the lower extremities (Tr. 315). Plaintiff reported cramping, bleeding, and urinary symptoms (Tr. 313-15, 393). CRNP VanArsdale increased Plaintiff's Cymbalta dose and ordered additional testing. (Tr. 313). A pelvic ultrasound showed markedly abnormal appearing endometrium. (Tr. 388, 583) An abdominal/pelvic CT showed no calculi or inflammatory changes (Tr. 581). Examination indicated normal gait, no spine tenderness, and no edema. (Tr. 394-95). Providers diagnosed microscopic hematuria, pelvic congestion syndrome and history of kidney stone. (Tr. 395).

On August 24, 2012, Plaintiff presented to Dr. John Ingari for bilateral hand numbness and tingling. (Tr. 398). Dr, Ingari observed no abnormalities on physical examination except for reported tingling and Tinel's sign on the right with direct compression, diagnosed Plaintiff with a "double crush" type syndrome with C6 radiculopathy and "mild" bilateral carpal tunnel syndrome,  and prescribed braces for Plaintiff to use. (Tr. 398-99). Plaintiff denied any other musculoskeletal symptoms, swelling, and psychiatric complaints. (Tr. 402). Plaintiff's medications included Cymbalta, aspirin, naproxen, and tramadol. (Tr. 404).

On October 2, 2012, state-agency physician Dr. Nghia Van Tran, M.D., reviewed the above-described medical record and opined that Plaintiff could perform a range of

light work, standing for three hours in day, and occasionally performing postural movements. (Tr. 62-63). Dr. Van Tran cited the May 2012 physiatry examination (Tr. 258), Dr. Ingari's August 2012 treatment note, and July 2012 endocrine examinations. (Tr. 62).

On August 31, 2012, Plaintiff followed-up for her pelvic complaints. (Tr. 438), Plaintiff reported that she was "good" general health ad denied fatigue, weight change, musculoskeletal symptoms, neurologic symptoms, and psychiatric symptoms. (Tr. 438).

Plaintiff continued reporting pelvic pain and Dr. Kathryn Hassinger, M.D. prescribed Vicodin and recommended hysterectomy.  (Tr. 439, 441-43, 460, 656). In October and November, she reported back pain. (Tr. 443, 444). At a pre-operative examination, Plaintiff reported "chronic low back problems which have limited her activity," and physical examination indicated no swelling and no major neurological deficits. (Tr. 426). Plaintiff underwent the surgery in December of 2012 without complications. (Tr. 431). Discharge instructions provided: "No work or school until cleared by your physician," "No lifting more than 15lbs," and "Avoid driving while using prescription pain medicine" (Tr. 600). Plaintiff reported side effects while taking Percocet, discontinued Percocet, and did not report subsequent side effects. (Tr. 449, 634-35). Primary care follow-up in January of 2013 did not indicate any pelvic complaints. (Tr. 637). Subsequent records contain no pelvic complaints. Doc. 10.  Through 2013, Plaintiff denied any diabetes symptoms. (Tr. 620, 626, 630, 635).

Plaintiff continued reporting musculoskeletal symptoms throughout the relevant period. Doc. 12. On September 15, 2012, cervical spine MRI indicated "mild" degenerative disc bulges, but no significant neural foramen or central spinal canal stenosis at any level (Tr. 579). Hip MRI showed minimal trochanteric bursitis, with no significant acute bony or soft tissue abnormality (Tr. 575). Providers observed decreased sensation and abnormal posture (Tr. 478-79),  needing assistance for balance with trigger points, tenderness, and decreased range of motion (Tr. 469), tenderness, positive Tinel's at both elbows, moderate restriction of range of motion, and diminished sensation (Tr. 470), tenderness (Tr. 650), muscle spasm in her shoulders. (Tr. 640). Dr. Eline recommended Plaintiff start physical therapy after her  hysterectomy, and  Plaintiff later reported that she was unhappy with Dr. Eline's assessment, and she reported having been told "there was nothing wrong with [her] hips or neck" (Tr. 471, 505). On January 24, 2013, Plaintiff reported that her health was deteriorating, but she had applied for "multiple jobs." (Tr. 499). Dr. Chelliah did not perform a physical examination. (Tr. 499). In March of 2013, Plaintiff denied symptoms of diabetes, like abnormal blood sugar, weakness, shakiness, sweatiness, or urinary complaints. (Tr. 626). Examination was normal except tenderness. (Tr. 629).

On March 28, 2013, Plaintiff underwent neurosurgical examination with Dr. Robert Schlegel, M.D. (Tr. 511-512). On examination, Plaintiff exhibited tightness and no focal radicular deficits in Plaintiff's sensation, power or reflexes. (Tr. 511, 517).  Dr.

Schlegel opined that Plaintiff was not a candidate for surgery given the absence of radicular deficits:

> The patient relates that she has filed for a permanent disability status on the basis not only of her cervical and lumbar issues but also diabetes and neuropathy etc. I am not presently identifying a problem surgically at this point in time.

(Tr. 511). Plaintiff treated with chiropractic sessions. (Tr. 536-37, 618).  Plaintiff denied medication side effects. (Tr. 618, 615, 630). Plaintiff reported "relief after just 1 [treatment]" from the chiropractor. (Tr. 618). In July of 2013, she exhibited increased sugars and reported drinking heavily after her partner left her. (Tr. 615). The record contains no evidence of subsequent treatment. Doc. 10.

On March 24, 2014, Plaintiff appeared and testified before the ALJ. (Tr. 28). Plaintiff's counsel indicated that there were no subsequent records. (Tr. 29). Plaintiff testified that she was unable to work because sitting for too long cause numbness and her hips to lock as a result of injuries to her back. (Tr. 30). She testified to numbness, pain, and burning throughout her back. (Tr. 32). She testified that she could not sit for more than ten minutes or sit for more than twenty minutes. (Tr. 34). She testified that she spent most of the day laying down. (Tr. 35). Plaintiff testified that she had no subsequent treatment because she had no insurance. (Tr. 36). She testified to diabetes symptoms "all the time." (Tr. 37). She testified that her medications caused side effects. (Tr. 37). She testified to symptoms of anxiety and depression. (Tr. 38).

## V.    Plaintiff Allegations of Error

### A. Medical Opinions

The only medical opinion in the record is from a non-treating, non-examining source and supports the ALJ's RFC. Doc. 10. In *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011), the Third Circuit held that an ALJ could rely on a non-examining, non-treating medical opinion that was uncontradicted by any other opinion in the record. *Id.* at 360-63; *see also Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002) (Denying claimant's appeal where claimant did "not point to any relevant medical opinion that supports his allegations that his pain and exertional limitations are more severe than the ALJ found them to be"). Plaintiff asserts that the ALJ is unsupported by "any RFC assessments," but the ALJ's RFC is supported by Dr. Van Tran's RFC assessment. (Pl. Brief at 24); (Tr. 62-63).

Plaintiff asserts that the ALJ violated the treating source rule. (Pl. Brief at 11-18). However, Plaintiff submitted no treating source medical opinion. The treating source rule applies only to statements that meet the definition of medical opinion. *See* 20 C.F.R. §404.1527(c)(2); SSR 96-5p (Statements on issues reserved to the Commissioner are "never entitled to…special significance"); SSR 06-3p ("only 'acceptable medical sources' can be considered treating sources"). Discharge notes that Plaintiff should engage in  "no work or school until cleared by your physician" are excluded from the definition of medical opinion because they are statements on an issue reserved to the

Commissioner (Tr. 600). Moreover, this note does not indicate that Plaintiff's impairments would be disabling for the requisite twelve months. *See* 42 U.S.C. 423(d)(1)(A).

SSR 96-5p provides that an ALJ may not reject a statement on issues reserved to the Commissioner for a lack of support without recontacting the treating source. *Id.* However, this is not reversible error at the District Court level unless Plaintiff establishes good cause for failing to submit the information the source would have provided. *See Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). District Court review is limited by 42 U.S.C. §405(g). *Matthews* interpreted 42 U.S.C. §405(g) to prohibit remand when Plaintiff alleges that the ALJ should have considered new and material evidence unless Plaintiff's establishes good cause for omitting the evidence from the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). *Matthews* explained:

> It might seem ... that the district judge and we would be free to consider the new evidence that was before the Appeals Council in deciding whether the decision denying benefits was supported by the record as a whole. And of course this is right when the Council has accepted the case for review and made a decision on the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts. It is wrong when the Council has refused to review the case. For then the decision reviewed in the courts is the decision of the administrative law judge. The correctness of that decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him....

*Id.* (quoting *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993)). The Court continued:

Our holding is also in accord with sound public policy. We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. *See Szubak*, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled.") (quotation omitted); *Wilkins,* 953 F.2d at 97 (Chapman, J., dissenting) ("By allowing the proceedings to be reopened and remanded for additional evidence, ... the majority is encouraging attorneys to hold back evidence and then seek remand for consideration of evidence that was available at the time of the ALJ hearing."). Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.

*Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001). In *Matthews*, the Court held that the claimant "should have known" the additional evidence, a vocational evaluation, was necessary. *Id.* Consequently, the claimant failed to establish good cause. *Id.*

Plaintiff cannot evade the good cause requirement by framing the issue as recontact pursuant to SSR 96-5p. The rationale for the good cause requirement applies in the recontact context. By arguing that the ALJ should have recontacted the treating source, Plaintiff is implicitly arguing that the treating source had new and material information that the ALJ should have obtained. However, Plaintiff was "in a better position to provide information about his or her own medical condition." *Martin v. Colvin*, 4:11-CV-02378, 2014 WL 1235664 (M.D. Pa. Mar. 25, 2014) (quoting *Money v. Barnhart,* 91 Fed. Appx. 210, 215 (3d Cir.2004) (*Bowen v. Yuckert,* 482 U.S. 137, 146 n.

5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and 20 C.F.R. §§ 404.1512(a) and 416.912(a)).

Allowing a claimant to secure a remand pursuant to SSR 96-5p for failing to recontact the treating source could tempt claimants to submit statements on issues reserved to the Commissioner, but not medical opinions or RFC assessments, "with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled." *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001) (quoting *Szubak*, 745 F.2d at 834).

Plaintiff "should have known" that a treating source medical opinion would be necessary. *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001). The Regulations plainly state that statements on issues reserved to the Commissioner are not medical opinions or entitled to any special deference. *See* 20 C.F.R. §404.527; SSR 96-5p. Plaintiff has failed to establish good cause for failing to submit the treating source medical opinions. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011) (claimant failed to establish good cause for failing to submit medical opinions). The Court cannot remand for an ALJ's failure to recontact pursuant to SSR 96-5p if Plaintiff fails to demonstrate good cause. *Id.* The Court does not recommend remand to recontact the treating source. There are no treating source medical opinions in the record. Doc. 10.

If a statement or medical opinion is not subject to the treating source rule, the ALJ does not need to afford the statement or medical opinion any special deference or meet the "good reasons" requirement of 20 C.F.R. §404.1527(c)(2). When evidence is not entitled to special deference, the Court reviews the ALJ's resolution of an evidentiary

conflict using the substantial evidence standard of review. *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). As long as the ALJ "explain[s] in the decision the weight given" and a reasonable person would find the evidence adequate to discount the opinion, the Court will uphold the ALJ's assignment of weight to a non-treating source opinion. *See* 20 C.F.R. §404.1527(e)(ii); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).

When the ALJ does not assign controlling weight to a treating source opinion, ALJ applies the factors in 20 C.F.R. §404.1527(c). Section 404.1527(c)(1) provides that, "[g]enerally, [the Commissioner] give[s] more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *Id.* Pursuant to 20 C.F.R. §404.1527(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." *Id.* Pursuant to 20 C.F.R. §404.1527(c)(4), "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." *Id.* Pursuant to 20 C.F.R. §404.1527(c)(5), more weight may be assigned to specialists, and 20 C.F.R. §404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion." *Id.*

Plaintiff notes that treating source medical opinions are entitled to controlling weight and granted deference, but statements on issues reserved to the Commissioner are

not treating source medical opinions or entitled to controlling weight or deference. (Pl. Brief at 11); 20 C.F.R. §404.1527(c)(2); SSR 96-5p. In reply, Plaintiff cites additional legal authority addressing the treating source rule, but the treating source rule does not apply here. (Pl. Reply at 1-6) (citing SSR 96-2p; SR 96-6p). The "appropriate circumstances" test contained in SSR 96-6p applies only when treating source medical opinions exist in the record. *Id.*

Plaintiff notes that some evidence supports Dr. Hassinger's statement. (Pl. Brief at 12-16); (Pl. Reply at 2-6). However, the record could provide substantial evidence for both Dr. Hassinger's statement and the ALJ decision, because substantial evidence is "less than a preponderance." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Dr. Van Tran's opinion supports the ALJ's RFC. (Tr. 62-63).  Aside from identifying Dr. Van Tran as a non-examining, non-treating source, Plaintiff fails to provide any reason why the ALJ could not rely on Dr. Van Tran's opinion. (Pl. Reply at 6).  Identifying a source as non-treating, non-examining does not end the inquiry. 20 C.F.R. §404.1527(c). The examining relationship is only one factor in 20 C.F.R. §404.1527(c). *Id.* Other factors support the ALJ's reliance on Dr. Van Tran. 20 C.F.R. §404.1527(c) Dr. Hassinger's failed to provide any explanation or specific functional difficulties. 20 C.F.R. §404.1527(c)(3) ("[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion."). Records submitted after Dr. Van Tran's opinion do not significantly differ from records submitted prior to Dr. Van Tran's opinion, with

continued subjective complaints, but no new treatment or objective physical examination findings that were not also present in the records reviewed by Dr. Van Tran. Doc. 10. Subsequent imaging shows "mild" impairments in the cervical spine and hip, but, where there are no treating source medication opinions, this does not provide reason to find that ALJ could not rely on Dr. Van Tran's opinion. *Cf. Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Plaintiff cannot demonstrate that no reasonable person would have relied on Dr. Van Tran's opinion. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011). The Court does not recommend remand on these grounds. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

## B. Credibility

Plaintiff asserts that the ALJ erred in assessing credibility. (Pl. Brief at 25-28). When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P; *see also* 20 C.F.R. § 416.929. "Under this evaluation, a variety of factors are considered, such as: (1) 'objective medical evidence,' (2) 'daily activities,' (3) 'location, duration, frequency and intensity,' (4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain." *Daniello v. Colvin*, CIV. 12-1023-GMS-MPT, 2013 WL 2405442 (D. Del. June 3, 2013) (citing  20 C.F.R. § 404.1529(c)).

The ALJ is required to consider the location, duration, frequency, and intensity of Plaintiff's pain. Plaintiff writes that the ALJ did not write in the decision how he analyzed Plaintiff's pain. First, the ALJ provided extensive discussion of the location, duration, frequency, and intensity of Plaintiff's claim. (Tr. 16-18).  Second, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p; *see also Phillips v. Barnhart*, 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)). Plaintiff's claim that the ALJ did not "consider" precipitating factors, aggravating factors, or medication side effects also fails. (Pl. Brief at 26). Plaintiff provides no evidence that the ALJ did not consider these factors, and pointing out their absence from the decision does not establish that they were not considered. (Pl. Brief at 26).

Plaintiff writes that her subjective testimony should have been given "great weight." (Pl. Brief at 27) (citing *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993)). *Mason* provides that:

> An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). "While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749 F.2d at 1071. Where medical evidence does support a claimant's complaints of pain, the complaints should then be given "great weight" and may not be disregarded unless there exists contrary medical evidence. *Carter,* 834 F.2d at 65; *Ferguson,* 765 F.2d at 37.

*Id.* Plaintiff produced objective evidence of a condition that could reasonably produce pain, but not evidence of pain itself. *Id.* Consequently, Plaintiff's claims are entitled to serious consideration, but not great weight.

The ALJ is entitled to deference with regard to credibility determinations. *See Szallar v. Comm'r Soc. Sec.*, No. 15-1776, 2015 WL 7445399, at *1 (3d Cir. Nov. 24, 2015) ("the ALJ's assessment of his credibility is entitled to our substantial deference") (citing *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir.2014)). Moreover, "[n]either the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir.2011) ("Courts are not

permitted to re-weigh the evidence or impose their own factual determinations" (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Aside from arguing that the ALJ did not "consider" various factors and that her testimony was entitled to "great weight," Plaintiff provides no other reason to find that the ALJ erred in assessing her credibility. Plaintiff does not address any of the rationales the ALJ used, like the inconsistency between Plaintiff's report of diabetes symptoms to her providers and Plaintiff's testimony regarding diabetes symptoms (Tr. 16), the inconsistency between Plaintiff's report to treating providers that she had no side effects from mediation and her testimony that she had significant side effects from medication (Tr. 16), the objective evidence as interpreted by Dr. Van Tran (Tr. 16-18), and Plaintiff's noncompliance with treatment (Tr. 16). These are proper reasons to discount a claimant's credibility. *See* SSR 96-7p.  These are also accurate characterizations of the record. Plaintiff began taking tramadol again in August of 2012, and subsequently reported no medication side effects. (Tr. 404, 618, 615, 630). Plaintiff denied any diabetes symptoms like abnormal blood sugar, weakness, shakiness, sweatiness, or urinary complaints. (Tr. 620, 626, 630, 635). However, she testified to diabetes symptoms "all the time." (Tr. 37). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7P. Plaintiff fails to demonstrate that no reasonable person would find her less than fully credible. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court would not direct a verdict in

Plaintiff's favor if this issue were before a jury. *Id.* The Court does not recommend remand on these grounds.

## C. Step two

Plaintiff asserts that the ALJ erred in assessing her depression at step two. (Pl. Brief at 23) (Pl. Reply at 9). Plaintiff asserts that there is no mental health RFC assessment. (Pl. Brief at 24). Plaintiff cites no legal authority for the premise that the ALJ must obtain a mental health RFC assessment when there is no treating source medical opinion supporting Plaintiff's claim. (Pl. Brief at 24). Plaintiff asserts that with the "lack of opinion" evidence the ALJ should have sent Plaintiff for a Consultative Examination, but Plaintiff cites no legal authority for this premise, and fails to mention the uncontradicted opinion evidence supporting the ALJ's mental health RFC. (Pl. Brief at 24). Moreover, Plaintiff fails to identify any specific mental health limitations that the ALJ should have included in the RFC. (Pl. Brief at 24). *See Rutherford v. Barnhart,* 399 F.3d 546, 552–53 (3d Cir.2005) (Remand is not appropriate where ALJ's error does not affect the ultimate outcome); 28 U.S.C.A. § 2111 ("[T]he court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). In *Rutherford*, the Court held that any error in evaluating the claimant's obesity was harmless because:

> [Claimant] has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand.

*Rutherford*, 399 F.3d at 553. Plaintiff makes no more than a generalized assertion here. *Id.* Pursuant to *Rutherford*, the Court does not recommend remand on these grounds.

### D. Step Five

Plaintiff makes several alleged challenges to the vocational evidence based on SSR 96-9p. (Pl Brief at 19-21) (Pl. Reply at 8-9). SSR 96-9p provides, in general terms, that non-exertional limitations erode the occupational base. *Id.* Plaintiff correctly notes that a claimant cannot perform the "full range" of light work with a sit/stand option, but the ALJ did not find that Plaintiff could perform the full range of light work. (Pl. Brief at 19). Plaintiff asserts that the ALJ failed to determine the erosion of the occupational base given a sit/stand option, but the VE testimony of the existence of jobs in the national economy given an RFC with a stand/stand option provides evidence of the erosion of the occupational base cause. SSR 00-4p.

The ALJ may generally rely on VE testimony, but may not rely on VE testimony regarding "exertional classification" because "the regulatory definitions of exertional levels are controlling." SSR 00-4p (citing 20 C.F.R. §404.1567). Plaintiff appears to assert that a limitation to sitting or standing at will, and standing no more than three hours per day, is inherently inconsistent with the regulatory definition of light work, so the ALJ was not entitled to rely on VE testimony. (Pl. Brief at 19); (Pl. Reply at 8). However, SSR 00-4p refers to the Regulations, not SSR 83-10 to define light work. (Pl. Brief at 22); (citing SSR 83-10). The definition of light work requires only that claimant can

carry, lift, or exert force *up to* twenty pounds occasionally or *up to* ten pounds frequently. *See* 20 C.F.R. § 404.1567(b); Dictionary of Occupational Titles 762.687-014.[2] Although light work is typically considered to require six hours of standing or walking in an eight hour workday, this is not consistent with the regulatory definitions. *See* 20 C.F.R. § 404.1567(b); Dictionary of Occupational Titles 762.687-014.  Even when the amount lifted is negligible, a job can be considered light even if it is "primarily sitting" if it involves the operation of foot or hand controls or requires production paced work. *Id.* An RFC for sitting six hours out of an eight-hour workday is not inherently inconsistent with the definition of light work. *Id.*

Plaintiff asserts that sitting or standing "at will" fails to specify the frequency at which Plaintiff would alternate positions. (Pl. Brief at 20). Judge Conoboy has remarked that this argument from Plaintiff's counsel "borders on the disingenuous," writing:

> Plaintiff argues here that the ALJ's requirement that the Plaintiff work only at a job where she "can alternate sitting and standing at will" is "too vague to determine the extent of the erosion on the occupational base." (R.21 and Doc. 11 at 21). This argument borders on the disingenuous.
>
> The ALJ's directive that the Plaintiff may sit or stand "at will" constitutes a clear direction that it is for the Plaintiff to determine when and for how long she sits or stands. There is no indication that the VE was in any manner confused by this directive. Plaintiff's argument unaccountably suggests that the ALJ's directive would *require* the Plaintiff to sit and stand for specified periods of time. Plaintiff's interpretation of the ALJ's "sit/stand at will" requirement is simply inaccurate and the Court finds that the VE properly

---

[2] A claimant could also meet the definition of light work if they were unable to lift these amounts, but met certain other criteria. *See* 20 C.F.R. § 404.1567(b); Dictionary of Occupational Titles 762.687-014.

factored the "sit/stand at will" requirement into her analysis of what jobs the Plaintiff could perform. Accordingly, the VE's assessment of the Plaintiff's employability was appropriately credit by the ALJ.

*Nicholson v. Colvin*, No. 3:14 CV-1819, 2015 WL 1275365, at *10 (M.D. Pa. Mar. 19, 2015) (Conoboy, J.). Plaintiff's counsel has made this argument, unsuccessfully, in several other cases. *See Orndorff v. Colvin*, No. 114CV02465CCCGBC, 2016 WL 1458408, at *13 (M.D. Pa. Mar. 9, 2016), *report and recommendation adopted,* No. 1:14-CV-2465, 2016 WL 1450172 (M.D. Pa. Apr. 13, 2016);   *Ritz v. Colvin*, No. 115CV00388CCCGBC, 2016 WL 1458914, at *15 (M.D. Pa. Mar. 9, 2016), *report and recommendation adopted,* No. 1:15-CV-388, 2016 WL 1450181 (M.D. Pa. Apr. 13, 2016); *Nicholson v. Colvin,* No. 3:14 CV–1819, 2015 WL 1275365, at *10 (M.D. Pa. Mar. 19, 2015) ("'at will' constitutes a clear direction that it is for the Plaintiff to determine when and for how long she sits or stands"). Consistent with these cases, the Court concludes that "at will" is sufficiently specific. *See also Torres v. Colvin,* No. 3:14–cv–00144 (M.D. Pa. Oct. 30, 2015); *Minichino v. Colvin,* 955 F.Supp.2d 366, 381 (M.D. Pa. 2013) (A requirement to sit or stand at will constitutes "shorthand language in matters about which the ALJ and VE are well versed").  The Court does not recommend remand on these grounds.

## VI.   Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were

supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate.    Accordingly, it is HEREBY RECOMMENDED:

I.    This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such

objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: September 30, 2016                    _____s/Gerald B. Cohn_____
                                                          GERALD B. COHN
                                             UNITED STATES MAGISTRATE JUDGE